IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,
        Plaintiff,

v.                                     Case No. 2:01-CV-290
                                       JUDGE EDMUND A. SARGUS, JR.
                                       Magistrate Judge Mark R. Abel

STEVEN E. THORN, et al.,
        Defendants,

    and

ROGER WEIZENEGGER, et al.,
        Relief Defendants.

### OPINION AND ORDER

This matter is before the Court for consideration of the Renewed Motion of the Receiver to Show Cause against Bank One (Doc. #805); Defendant Karen Estrada's Motion for entry of Final Judgment (Doc. #746); the SEC's Cross-Motion for Final Judgment as to Karen Estrada, Fund Global, LLC and Global Equity Group, LLC (Doc. #752 and #753); and the Motion and Amended Motion of Frau Erka Obrist-Alpstaeg for Relief under Rule 60(b) (Doc. #824 and #827). For the reasons that follow, the Receiver's motion as to Bank One is granted; Defendant Estrada's motion is denied; the SEC's cross-motion is granted; and the motions of Frau Erka Obrist-Alpstaeg are denied without prejudice to renewal.

I.

**A. Renewed Motion of the Receiver to Show Cause against Bank One.**

The Receiver renews an earlier filed Motion to Show Cause as to why Bank One should

not be held in contempt of court for disbursing $799,960 to Marcel Wunderli, a Swiss citizen, in violation of this Court's April 2, 2001 asset freeze Order. In a previous Order, this Court considered the Receiver's original request to show cause against Bank One. (Doc. #727). The Court found that the disbursement was made without prior approval of the Court or the SEC but the harm occasioned by the act was not clear because "an issue remain[ed] as to the source of funds Mr. Wunderli invested in the Financial Ventures at Bank One." (*Id.* at 4). The Court conducted a status conference with counsel in an attempt to resolve the source of funds issue. The Receiver's motion was denied without prejudice to renewal pending the parties' discovery as to the source of funds[1].

The Receiver now renews his earlier request to hold Bank One in contempt for violation of the Asset Freeze Order. The Receiver states that no new information has been gleaned as to the source of funds Wunderli deposited at Bank One[2]. According to the Receiver, the harm caused by Bank One's disbursement is evident because it served to limit the amount of funds available for disbursement to victims of the underlying scheme. The SEC supports the Receiver's Renewed Motion to Show Cause and notes that the records submitted by Wunderli as to source of funds "do not satisfy the requirements that were imposed on other investors in 2001." (Doc. #811 at 3).

Bank One argues that it has taken steps to ensure that there are no sub-investors to the Wunderli funds. If there were sub-investors, those parties would have a potential claim against

---

[1] In this regard, Bank One retained counsel in Switzerland. A request for International Judicial Assistance was made and Wunderli was questioned at a hearing in Zurich in January 2006.

[2] While Wunderli contends that the monies deposited with Financial Ventures were his personal funds, no documents have been produced to confirm the source of the funds.

2

Wunderli, which would then reduce the amount of funds recoverable by Wunderli, as an otherwise defrauded investor, from the Receiver. Bank One placed advertisements in two business newspapers in Switzerland seeking identification of anyone who may have invested in the Thorn programs and lost money, (Doc. #816, Exhibits 4 and 5). Bank One received no response to the ads. According to Bank One, there has been no harm caused by the disbursement because the funds all came from Wunderli. Bank One contends that contempt is not an appropriate sanction in the absence of a showing of harm.

The Court concludes that, in the absence of evidence to establish that the funds Wunderli invested through Financial Ventures were his own personal funds and were not obtained from any sub-investors, disbursement of the money caused harm to other investors and resulted in a preference for Wunderli. While the Court does not find that the disbursement was done in bad faith, the payment violated this Court's asset freeze Order. The Court finds that Bank One violated the asset freeze Order. The Court notes that the Receiver and the SEC request that Bank One repay the monies wrongfully disbursed. The Court reserves ruling on the remedy for the violation pending a hearing on **Thursday, April 26 at 10:30 a.m.** before the undersigned. The Receiver's motion (Doc. #805) is otherwise granted.

### B. Final Judgment as to Karen Estrada.

Defendant Karen Estrada has filed a Notice of Compliance and Request for Entry of Final Judgment. In the filing, Estrada claims that she has complied with this Court's Order "to the full extent of her ability" and requests that Final Judgment be entered. (Doc. #746 at 1).

In its *Opinion and Order* dated April 16, 2004, the Court ordered Estrada to disgorge

$419,975.00. The Court considered Estrada's argument as to whether her ability to pay should be a factor in determining the disgorgement award. After a hearing on this and other issues, the Court held:

> The evidence in this case reveals that although Estrada has little formal education or professional training, she is an intelligent woman who ultimately raised $6.1 million dollars for Defendant Thorn's programs. Further, Estrada received anywhere from 1 to 33 percent returns on the investments. She also opened an off-shore bank account in the Isle of Man and received interest checks from Thorn drawn on foreign bank accounts. In addition, Estrada assisted investors by wiring money to foreign accounts and by negotiating methods for investors to withdraw from the programs. Based on Estrada's central role in Thorn's investment scheme, the Court concludes that the remedy of disgorgement is warranted and should not be diminished on account of her current financial state.

(*Op. and Order*, 4-16-04, at 5). The Court also ordered Estrada to pay a civil penalty in the amount of $5,000. The Court stated that "[i]f Defendant Estrada is unable to pay these amounts to the Receiver in full immediately, she and the Securities and Exchange Commission shall exchange proposals for the satisfaction of the Court's Order. The terms of any agreement reached shall be submitted to the Receiver." (*Id.* at 9).

Following the Court's Order, Estrada's counsel sent an e-mail to the Receiver and the SEC stating that she would "promptly wire transfer funds to the Receiver to the full extent of her ability to pay, in partial satisfaction of the Court's Order." (Doc. #746, Exhibit C). Estrada also represented that she would prepare financial statements for the SEC's consideration to "serve as the basis of proposals for the satisfaction of the Court's Order." (*Id.*). Estrada paid $37,982.42 on April 27, 2004[3]. On May 18, 2004, Estrada sent financial statements to the Receiver and the SEC citing a negative net worth of $162,871.

---

[3]This sum represented the funds frozen in Estrada's account at Santa Lucia Bank.

4

In her present motion, Estrada claims that she has a negative net worth of $485,780 and she is therefore unable to satisfy the Court's Order of disgorgement and civil penalty. Estrada argues that unless the Court enters Final Judgment discharging her of any further obligation to pay, she will be "saddled with a tax obligation on phantom income." (Doc. #746 at 3).

In response to Estrada's motion, the SEC has filed a Cross-Motion for entry of Final Judgment pursuant to the Court's April 16, 2004 *Opinion and Order*. The SEC opposes Estrada's request to extinguish her obligation, noting that this Court has twice considered requests by Estrada regarding her alleged inability to pay. (Sept. 20, 2002 *Op. and Order*, Doc. #239; April 16, 2004 *Op. and Order*, Doc. #676). The SEC argues that Estrada's financial statement does not demonstrate that she is insolvent but rather, that she has "large illiquid assets, such as her home and retirement accounts. Moreover, her purported liabilities include several dubious items, including large debts allegedly owed to a friend and to relatives." (Doc. #751 at 4).

The Receiver also opposes Estrada's current request, noting that Estrada has never made a proposal for satisfying the Court's Order. The Receiver avers as follows:

> My review of the information submitted by Karen Estrada shows that it is completely lacking in any back up information. For example, there are no real estate appraisals, no credit card statements, no bank records, no copies of any contracts, or any other indicia to validate the obligations and amounts claimed by Defendant Estrada. In addition, a number of the debts listed by Estrada are supposed debts to family members and/or other persons who participated in the investment scheme and who were the recipients of payments. As examples, Karen Estrada claims that she owed $250,200 to her parents for legal fees. She also claims that she owes $20,000 in credit card debt also for legal fees. She also claims that she owes money to Ric Noble. Mr. Noble was an early investor in the Thorn Programs in the amount of 3.5 million dollars. Mr. Noble received all of his monies back from the investment scheme and has refused to provide any information to the Receiver after repeated requests. As Receiver, I have questions

> respecting the alleged debt of Estrada to Mr. Noble. In short, as Receiver I have a number of issues to explore respecting Defendant Estrada's financial claims and her supposed inability to pay any more on the Disgorgement Order and Civil Penalties imposed by the Court.

(Affidavit of Michael P. O'Grady, Doc. #750, Exhibit 1 at ¶ 6).

In reply to the positions of the SEC and the Receiver, Estrada maintains that she is unable to pay the sum ordered by this Court. Estrada argues that, if the Court does not extinguish the disgorgement and civil penalty, it should at least reduce the amount by the sum already paid and retain exclusive jurisdiction over the matter. In support of her inability to pay, Estrada has submitted a supplemental filing which includes the transcript of her October 7, 2005 deposition by the Receiver[4] and her August 2005 plea agreement in the Northern District of Ohio[5].

While the Court takes notice of these filings, the Court is not inclined to extinguish Estrada's obligation to pay the disgorgement and civil penalty previously ordered. The Court is not unsympathetic to Estrada's claimed financial hardship, but the Court is most troubled by the fact that Estrada has made no effort at all to propose a payment plan to the SEC and the Receiver. For this reason, the Court finds Estrada's motion to extinguish her obligation to pay without merit.

The SEC requests that Final Judgment be entered as to Estrada and that she be ordered to pay the outstanding amount within thirty days of entry of Judgment. The Court agrees and will enter Final Judgment against Estrada by separate Order.

---

[4] A review of the deposition indicates that the Receiver and SEC have received further information and some documentation regarding Estrada's debts.

[5] Estrada pled guilty to an Information charging her with filing a false income tax return in violation of 26 U.S.C. § 7206(1).

6

## C. Frau Erka Obrist-Alpstaeg's Rule 60(b) Motions.

On April 28, 2006, the Court issued an *Opinion and Order* addressing a request for distribution of monies from the Receiver on behalf of Frau Erka Obrist-Alpstaeg, a Swiss national. Ms. Obrist, who is not a named party in this case, sought release of $200,000 purportedly invested in the Thorn programs in November 1999. After reviewing evidence submitted by both Ms. Obrist and the Receiver, the Court concluded that it was inappropriate to distribute the requested sum because the evidence was insufficient to establish that Ms. Obrist was the source of the funds. The Court noted that it would leave to the "Receiver and the SEC the decision of whether Ms. Obrist may present other evidence to substantiate her claim that she was an investor." (Doc. #812 at 4, n.2).

In her Motion and Amended Motion for Relief under Rule 60(b), Ms. Obrist argues that she was a Thorn investor and that this Court ignored evidence to support her claim to the $200,000[6]. At the outset, the Court finds that Rule 60(b) is an inappropriate means to achieve the relief sought. Ms. Obrist is not a named party and there has been no Judgment entered against her. Ms. Obrist claims to be an investor in the Thorn programs and, like other investors, seeks a return of funds. Ms. Obrist's motions are in reality requests for reconsideration and the Court will construe the motions as such.

In seeking reconsideration, Ms. Obrist argues that the Court erroneously credited the position of the Receiver and the SEC on four points: (1) there is no independent evidence

---

[6]Ms. Obrist is essentially arguing that the Court failed to credit arguments she made in her Reply Brief in response to the position advanced by the SEC and the Receiver.

showing that Ms. Obrist invested $200,000 with Thorn; (2) Udo Westphal, a principal of Relief Defendant Maconell, S.A, has a competing claim to the money; (3) Roger Weizenegger has a competing claim to the money; and (4) Albert Obrist, Ms. Obrist's son, is pursuing his mother's claim for his own benefit.

The SEC and the Receiver argue that Ms. Obrist's present motion simply recites what was previously argued in connection with her initial motion for lift of the asset freeze. The Court agrees with this observation. In the Court's view, although Ms. Obrist claims that the Court failed to consider her arguments, the assertion is not true. The Court considered Ms. Obrist's arguments but concluded that the dispute as to the source of funds made it inappropriate to release money to Ms. Obrist. The Court allowed Ms. Obrist to provide additional evidence to the Receiver and the SEC, but according to the Receiver and the SEC, nothing definitive has been gleaned as to the source of funds[7]. In the Court's view, the present motions reflect displeasure with the Court's decision. Nevertheless, the Court will allow Ms. Obrist the opportunity to present her position to the Court at a Hearing, to take place on **May 17, 2007 at 10:00 a.m.** before the undersigned. Counsel for Ms. Obrist shall serve on attorneys for the SEC and the Receiver a List of Witnesses and Exhibits no later than **May 1, 2007.** In addition, all witnesses identified, including Ms. Obrist and her son, Albert Obrist, shall be available for deposition in Columbus, Ohio to take place at some time within **seven (7) days** prior to the Hearing. The specific date(s), place and time(s) for the depositions shall be identified by the SEC no later than **May 3, 2007.** At this juncture, the motions for relief under Rule 60(b) are denied without

---

[7]Although Ms. Obrist and her son have made declarations as to the source of funds, no supporting documentation has been provided.

8

prejudice to renewal following the hearing.

## II.

The Renewed Motion of the Receiver to Show Cause against Bank One (**Doc. #805**) is **GRANTED**. The Court reserves ruling on the remedy for the contempt violation pending a Hearing on **Thursday, April 26, 2007 at 10:30 a.m.** before the undersigned.

Defendant Karen Estrada's Motion for entry of Final Judgment (**Doc. #746**) is **DENIED**. The SEC's Cross-Motion for Final Judgment as to Karen Estrada, Fund Global, LLC and Global Equity Group, LLC (**Doc. #752 and #753**) is **GRANTED**. Final Judgment will be entered by separate Order.

The Motion and Amended Motion of Frau Erka Obrist-Alpstaeg for Relief under Rule 60(b) (**Doc. #824 and #827**) are **DENIED without prejudice to renewal** following a Hearing to be held on **Thursday, May 17, 2007 at 10:00 a.m.**

The Clerk shall remove these motions from the Court's pending motions list.

**IT IS SO ORDERED.**

3-29-2007
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

9